LOTTINGER, Judge.
This appeal concerns a tort action which arose as a result of an automobile collision which occurred on February 10, 1964 in Tangipahoa Parish. The accident occurred when a 1964 Ford refrigerator truck backed from a driveway onto La. Highway No. 51, and came into collision with a 1964 Volkswagen sedan which was heading south on La. Highway No. 51. The truck was backing out of the driveway in a generally northerly direction intending to turn and head south, or in the same direction as the automobile with which it came into collision. The plaintiff, Annie Mae Tillis, was a passenger riding in the right rear seat of the Volkswagen automobile and she, together with her husband, Willie B. Tillis, instituted this suit against Hartford Accident & Indemnity Company, the liability insurer of the Ford truck. Mrs. Tillis’s suit seeks compensation for the pain and suffering which she sustained as a result of the accident, and her husband claims the medical expenses and loss of wages sustained by the community.
The defendant filed a general denial, and, after a trial on the merits, the Trial Judge rendered judgment in favor of Mrs. Tillis, and against the defendant in the amount of $4,000.00 and in favor of Willie B. Tillis and against the defendant in the amount of $2,052.10. It is from this judgment that the defendant has perfected this suspensive appeal, setting forth four specifications of error on the part of the Trial Court.
The first specification of error assigned by the appellant is that the Trial. Court erred in finding that the proximate cause of the accident was the negligence of Francis Annelet, the driver of the Ford' truck, who *848 at the time of the accident, was an employee of Chris Distributing Company, who was the owner of the track insured by the defendant. On direct examination, Mr. Annelet testified that he had delivered some pies to the Tangi Bar, and after delivering the pies, walked out, got into his truck, and backed out of the driveway. When he was partially out onto the highway, he heard a noise, stopped, got out of the track, and discovered that he had been involved in a collision with a 1964 Volkswagen sedan being operated by Glenn Stafford, and in which the plaintiff was a passenger. Mr. Annelet testified that he was backing in a northerly direction, intending to turn his wheels and head south on La. Highway 51. He testified that he saw no other vehicles on the highway and at one point testified as follows:
“Q. It is your testimony that there were no other vehicles—
A. There was nothing coming—
Q. Headed north on the highway ?
A. No sir, I didn't see him, and I don’t see how in the world he hit me, I just couldn’t—
Q. Is this place that you were pulling out from or backing out from, is that on a corner?
A. No, sir, it’s right in the middle of the block.
Q. When did you first see the Volkswagen?
A. The only time I saw the Volkswagen, was after I hit him. He pulled up to the side of the truck.”
Early in his testimony, Mr. Annelet said that at the time of the impact, his truck was about a foot onto the highway; however, later in his testimony he testified as follows:
“Q. What I’m getting at is, was the whole area of the back end of your truck on the highway, or was just the left corner of the truck on the highway?
A. I would say about half of it, because I was ready to take off.
Q. Had you already straightened up to go south?
A. Yes, I had cut my wheels to the left when I heard ‘boomp’ just like that, and he pulled to the side, a young fellow.”
Mr. Glenn Stafford, who was the driver of the Volkswagen automobile in which the plaintiff was a passenger, testified that he had just turned onto Louisiana Highway 51, and had shifted into second gear and he suddenly saw the truck backing out into his lane of traffic and he blew his horn at the truck, but the truck continued backing right on out into him. The right side of the Volkswagen struck the left rear of the track. Stafford testified that when he saw the track starting to back out into his lane of traffic, he swerved to the left and blew his horn trying to get out of the way of the track, but he was unsuccessful in doing so.
We believe that the record, particularly the testimony of the driver of the truck, and that of the driver of the Volkswagen, clearly establishes that the driver of the track, Mr. Annelet, was negligent in backing his truck onto the highway without first ascertaining that the way was clear, and further, that that negligence was a proximate cause of the accident.
The appellant’s second assignment of error is that the Trial Court erred in finding that Annie Mae Tillis suffered any injury whatsoever. The driver of the truck testified that Mrs. Tillis complained of injury approximately five minutes after the accident occurred, and the driver of the automobile in which Mrs. Tillis was a passenger said that at the time of the accident, she hit the front seat of the Volkswagen on the right side, then fell over against the left side of the back seat. He also said that immediately after the accident, Mrs. Tillis was complaining about her shoulder hurting.
Mrs. Tillis was treated initially by Dr. Pike in Kentwood, Louisiana, on the afternoon of the accident. He found her blood pressure, pulse, temperature, and respiration *849 all normal. He found her quite hysterical and complaining of pain in the neck and thoracic region of the back. He performed X-Rays of the cervical spine and thoracic spine which he interpreted as being negative of any pathology. He administered some sedation and other medication for the pain. Mrs. Tillis returned to him on February 12, with complaints of pain in her head, neck and back, as well as in her stomach. She returned again on February 15 and was given a diathermy treatment. On February 26 she again visited Dr. Pike’s office stating that she was spitting up blood and Dr. Pike was unable to find any clinical symptoms which would substantiate these complaints. She returned on February 27, and again on March 2 at which time Dr. Pike told her that there was no need to return. When she disagreed with him, he instructed her to find someone else to treat her. In substance, we might summarize Dr. Pike’s testimony by saying that Mrs. Tillis complained of pain which he was unable to substantiate by clinical findings. On August 1, 1964, Dr. Pike addressed a medical report to Mrs. Tillis’s counsel wherein he stated that it was his impression that Mrs. Tillis had suffered no injury and that she had no disability.
Mrs. Tillis next consulted Dr. Feder in Hammond, Louisiana, who was a general practitioner with apparent extensive experience in orthopedics. He first saw her on March 19, 1964, at which time she complained to him that she had been trying to work since the accident, but that gradually she was unable to continue to do her work as her condition grew worse. Her primary complaints at that time were pain in the back and neck, with radiation of the pain to the shoulders and inability to move her head or her neck due to pain. She also complained of headaches and dizziness, pain in the right hip region which seemed to come from her back, and pain in her left shoulder which caused her difficulty in raising her arm. Dr. Feder found extensive cervical, muscle tightness and spasm present at that time and found that motion was limited in all directions of the neck. He found extreme tenderness in the lower back region and found that the lordotic curve in her spine did not reverse when she stooped over. He found para-spinal muscle spasms over the lumbar spine, numbness in her left lower extremity and found the straight leg raising test and the Ely test to be both positive with reference to the left leg. There was tenderness in the left shoulder over the deltoid region. He stated that he found her to be in so much pain at the time of the examination that he gave her an injection of demerol to relieve the pain, as well as oral medication consisting of muscle relaxants and analgesics. He stated that he was quite concerned about the amount of muscle spasm in her neck and that he had never seen a stiff, rigid neck quite as bad as that which Mrs. Tillis had. He referred her to Drs. Malen and Wool-folk, who are radiologists practicing in Baton Rouge. Their X-Rays revealed no bone injury but did indicate hypertrophic degenerate changes in the C 5 and C 6 vertebrae. He stated in substance that it was his opinion that Mrs. Tillis had incurred a severe acute sprain of the neck and that she had not recovered from the sprain at the time that he saw her, and that the presence of disease of the bone prior to the accident had been aggravated and in turn was aggravating the condition itself. He also stated that she had an acute residual of a lumbosacral sprain of the lower back. He stated that the left arm pain and some of the shoulder pain was being referred from the neck pain. He believed that she should receive treatment in the form of physiotherapy to the neck with cervical traction and local ultrasonic therapy to the lower back and neck. She was given synthetic narcotic drugs and muscle relaxants, and this treatment was continued routinely until April 29, at which time Dr. Feder felt it necessary to obtain orthopedic consultation since he was concerned about the condition of Mrs. Tillis’s neck. He referred her to Dr. Dowell in Baton Rouge for examination and consultation on April 29.
*850 Dr. Dowell agreed in substance with Dr. Feder on his diagnosis but also recommended that Mrs. Tillis be hospitalized for traction therapy to her neclc and lower back. Pie recommended hospitalization, but Mrs. Tillis was somewhat reluctant, until July 7, at which time Dr. Feder stated that it was apparent that hospitalization of Mrs. Tillis had become necessary. On July 7, •she was admitted to the Seventh Ward General Plospital in Hammond for observation and treatment and was placed in cervical neck traction and pelvic traction. She was kept in this traction with eight pound weights and given pelvic traction up to twelve pounds from July 7, until July 18, at which time Dr. Feder felt that she had improved, and shé was discharged from the hospital. She returned to his office on July 20, for evaluation at which time Dr. Feder felt that her injury had not completely healed, but that her condition was no longer acute. He stated that on that •date she still had objective and subjective findings in her neck region and treatment was continued in the form of ultrasonic therapy with traction. He stated that she slowly and gradually improved to the point where she had minimal objective findings in her neck by October 15, 1964 and at that time felt that she should be symptomatic with -her neck for the next 4 or 5 months. He instructed her to use a traction apparatus if she needed it for any further treatment and discharged her on October 15. She returned to Dr. Feder about twenty-four days later complaining of neck pain, at which time he simply gave her some additional oral medication.
Dr. Dowell, an orthopedist to whom Mrs. Tillis was referred by Dr. Feder, examined Mrs. Tillis on April 29, 1964, and at that time she complained of pain and stiffness in her neck and lower back. An examination of her neck revealed tenderness both anteriorly and posteriorly. Active neck flexion was moderately restricted, particularly extension of the cervical spine. He found tenderness over the upper part of the left trapezius muscle, tenderness over the paravertebral muscles at the lumbar level as well as muscle tightness. The summary of his opinion of Mrs. Tillis’s condition is that she sustained a sprain of the neck and a paravertebral muscle sprain to her lower back. Her X-Rays showed no evidence of bone injury but did show some degenerative arthritic changes between C 5 and C6. She had considerable restriction of active motion in her neck and probably some muscle spasm in the paravertebral muscles at lumbar level. It was his opinion, after having examined her, that she would probably benefit from hospitalization with the use of head halter traction and possibly Pelvic traction.
Dr. David S. Malen, a radiologist to whom Mrs. Tillis was referred by Dr. Fed-er, examined her on March' 19, 1964. He stated that he had X-Rayed and examined Mrs. Tillis’s entire spine, and found no bone injury but also mentioned the degenerative change around C 5 and C 6.
Mrs. Willie Bridges testified that she had been an employer of Annie Mae Tillis at the time of the accident and that Mrs. Tillis continued to work for her for a period of 2 to 3 weeks after the accident and that during the last week that she worked, she complained that her neck was hurting. She testified that the work done by Mrs. Tillis was general housework.
We believe that the record clearly supports the finding of the Trial Judge that Mrs. Tillis did in fact sustain injuries as a result of this automobile accident. Dr. Pike’s statement and opinion to the effect that Mrs. Tillis had suffered no injury was apparently based upon his not having found any objective symptoms to substantiate the subjective complaints which Mrs. Tillis was making. The medical evidence clearly preponderates in fayor of the fact that. Mrs. Tillis did sustain ah injury as a result of this accident to her neck and lower back. *851 Accordingly, we find no merit in appellant's second specification of error.
Appellant’s third specification of error is that the Court erred in failing to give the proper weight to the testimony of Dr. Pike. In substance, we have dealt with this contention in the second specification of error. Dr. Pike, a general practitioner, saw absolutely no clinical findings to support Mrs. Tillis’s subjective complaints. On the other hand, Dr. Feder, also a general practitioner, testified that there were numerous clinical findings which substantiated Mrs. Tillis’s complaints. These clinical findings were likewise made by Dr. Dowell, an orthopedist, and in part, by Dr. Malen, a radiologist. The testimony of Drs. Feder, Dowell and Malen, coupled with the testimony of Mrs. Tillis herself and the testimony of the driver of the car in which she was a passenger, as well as the driver of the truck which was involved in the collision with the automobile, all preponderates in favor of the proposition that Mrs. Tillis did in fact sustain an injury in the collision. Dr. Pike’s testimony to the effect that Mrs. Tillis sustained no injury stands alone. We believe that the Trial Judge did give the proper weight for the testimony of Dr. Pike, and accordingly find no merit in the third specification of error assigned by the appellant
While counsel for appellant does not assign excessive quantum as a specific error, he nevertheless discusses the point to some extent in his brief, stating in effect that the quantum awarded by the Trial Judge was greatly excessive and manifestly erroneous. Our examination of prior awards in similar cases indicates that the Trial Judge’s award to Mrs. Tillis was excessive to the extent of $1000.00 and that her award should be reduced from $4000.00 to $3000.00. Therefore, the judgment should be amended accordingly.
Judgment amended and affirmed.